IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

STOCKROOM, INC.                             :
                                            :
        Plaintiff,                          :   Case No. 2:11-cv-06220-WHW-SCM
                                            :
    v.                                      :
                                            :
DYDACOMP DEVELOPMENT CORP.,                 :
and PLUG & PAY TECHNOLOGIES, INC.:


**ADDITIONAL BRIEF IN SUPPORT OF DYDACOMP DEVELOPMENT CORP.'S MOTION TO DISMISS THE NEW JERSEY CONSUMER FRAUD ACT CLAIM IN <u>PLAINTIFF'S SECOND AMENDED COMPLAINT</u>**


                                    MARSHALL, DENNEHEY, WARNER,
                                    COLEMAN & GOGGIN

Dated: <u>March 26, 2013</u>          BY: <u>/s/ David J. Shannon, Esq.</u>
                                    DAVID J. SHANNON, ESQUIRE
                                    ERIC A. PACKEL, ESQUIRE (*pro hac vice*)
                                    Attorneys for Defendant,
                                    Dydacomp Development Corp.

                                    2000 Market St., Suite 2300
                                    Philadelphia, PA 19103
                                    (215) 575-2600
                                    djshannon@mdwcg.com
                                    eapackel@mdwcg.com

**MOTION DAY:**  (Not applicable: *see* Court's Letter of March 13, 2013, Document 49)

# Table of Contents

I.  INTRODUCTION..................................................................................1

II  LEGAL ARGUMENT............................................................................ 1

    A.  BECAUSE THE ORDER PROCESSING SOFTWARE SYSTEM AT ISSUE IS SOLD TO MERCHANTS ENGAGED IN COMPLEX E-COMMERCE PAYMENT CARD TRANSACTIONS, SAID SOFTWARE SYSTEM IS NOT SOLD TO THE GENERAL PUBLIC AND THEREFORE DOES NOT QUALIFY AS "MERCHANDISE" UNDER THE NJCFA. ...............................................................................1

    B.  SINCE PLAINTIFF HAS NOT SPECIFICALLY PLED THAT THE SOFTWARE SYSTEM IS OFFERED TO THE PUBLIC, PLAINTIFF CAN NOT STATE A CLAIM UNDER THE NJCFA. ................................. 6

III  CONCLUSION.................................................................................. 8

# TABLE OF AUTHORITIES

## Cases

*Arc Networks, Inc. v. Gold Phone Card Co., Inc.*, 333 N.J. Super. 587, 589-590 (Law Div. 2000) .................................................................................................. 2

*Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 560-562 (D.N.J. 2002) .................................................................................................. 3

*Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 514-515 (3d Cir. N.J. 2006) .............................. 3

*Heartland Payment Sys., Customer Data Sec. Breach Litig.*, 834 F. Supp. 2d 566, 572 - 575 (S.D. Tex. 2011) .................................................................................................. 4, 5

*Hundred E. Credit Corp. v. Eric Schuster Corp.*, 212 N.J. Super. 350, 515 A.2d 246 (N.J. Super. Ct. App. Div. 1986) .................................................................................................. 6

*J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1274 (3d Cir. N.J. 1994)(The NJCFA .................................................................................................. 3

*Marascio v. Campanella*, 298 N.J. Super. 491, 499 (App.Div. 1997) ........................................ 2

*Multi-Media Int'l, LLC v. Clark Group, Inc.*, 2010 U.S. Dist. LEXIS 60795 (D.N.J. June 18, 2010) .................................................................................................. 2

*Princeton Healthcare System v. Netsmart New York, Inc.*, 422 N.J. Super. 467 (App.Div. 2011) .................................................................................................. 3

*Prof'l Cleaning & Innovative Bldg. Servs. v. Kennedy Funding Inc.*, 408 Fed. Appx. 566, 571 fn 2 (3d Cir. N.J. 2010) .................................................................................................. 6

*S. Broward Hosp. Dist. v. MedQuist, Inc.*, 516 F. Supp. 2d 370 (D.N.J. 2007) .................. 2,7

*United Cmtys., LLC v. Hallowell Int'l, LLC*, 2012 U.S. Dist. LEXIS 166136 (D.N.J. Nov. 21, 2012) .................................................................................................. 7

*Windsor Card Shops v. Hallmark Cards*, 957 F. Supp. 562, 567 (D.N.J. 1997) .......................... 3

## STATUTES

N.J. Stat. Ann. 56:8-1(c) .................................................................................................. 2

N.J. Stat. Ann. 56:8-2 .................................................................................................. 2

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STOCKROOM, INC. : | |
| : | |
| Plaintiff, : | Case No. 2:11-cv-06220-WHW-SCM |
| : | |
| v. : | |
| : | |
| DYDACOMP DEVELOPMENT CORP., : | |
| and PLUG & PAY TECHNOLOGIES, INC.: | |

**ADDITIONAL BRIEF IN SUPPORT OF DYDACOMP DEVELOPMENT CORP.'S MOTION TO DISMISS THE NEW JERSEY CONSUMER FRAUD ACT CLAIM IN PLAINTIFF'S SECOND AMENDED COMPLAINT**

I.   **INTRODUCTION**

This brief is submitted pursuant to the Court's March 13, 2013 letter (Docket Entry, "D.E." 49), requesting elaboration on the issue of whether the order processing software system purchased by Plaintiff qualifies as "merchandise" under the New Jersey Consumer Fraud Act ("NJCFA"). As set forth below, the nature of the transaction is such that the software system is not sold to the general public. Rather, it is sold to a discrete class of merchants engaged in complex E-commerce transactions. Thus, the software system does not qualify as "merchandise" under the NJCFA. Nor has Plaintiff pled, as it must, that the software was offered to the public for sale. Plaintiff therefore fails to state a claim under the NJCFA.

II.   **LEGAL ARGUMENT**

    A.   **BECAUSE THE ORDER PROCESSING SOFTWARE SYSTEM AT ISSUE IS SOLD TO MERCHANTS ENGAGED IN COMPLEX E-COMMERCE PAYMENT CARD TRANSACTIONS, SAID SOFTWARE SYSTEM IS NOT SOLD TO THE GENERAL PUBLIC AND THEREFORE DOES NOT QUALIFY AS "MERCHANDISE" UNDER THE NJCFA.**

1

The NJCFA prohibits various acts "in connection with the sale or advertisement of any merchandise or real estate . . .". N.J. Stat. Ann. 56:8-2. (Emphasis added). The NJCFA defines "merchandise" as "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale." N.J. Stat. Ann. 56:8-1(c). (Emphasis added).

While broad in scope, New Jersey Courts have limited the application of the NJCFA to protect only those consumers who purchase goods or services that are sold to the general public. Thus, a transaction falls outside the ambit of the NJCFA unless the merchandise in question is "generally sold to the public at large". *Marascio v. Campanella*, 298 N.J. Super. 491, 499 (App.Div. 1997). In other words, the NJCFA is applicable only to "products and services sold to consumers in the popular sense." *Arc Networks, Inc. v. Gold Phone Card Co., Inc.*, 333 N.J. Super. 587, 589-590 (Law Div. 2000)(Bulk telephone and computer services were not offered to the general public, so transaction did not fall under the NJCFA).

For example, in *S. Broward Hosp. Dist. v. MedQuist, Inc.*, 516 F. Supp. 2d 370 (D.N.J. 2007), the Court considered an NJCFA claim related to the provision of medical transcription services to hospitals and other healthcare facilities. *Id.* at 377. In dismissing the claim pursuant to a 12(b)(6) Motion to Dismiss, the Court held:

> This Court finds that, based on the nature of the transaction here, the NJCFA does not apply here and accordingly, Plaintiff's claim under the NJCFA will be dismissed. Medical transcription services are not services that are sold to the general public. Therefore, those services are not "merchandise" under the NJCFA.

*Id.* at 399. (Emphasis added).

Various other specialized products and services offered to discrete customers have likewise been deemed to fall outside the ambit of the NJCFA. In *Multi-Media Int'l, LLC v. Clark Group, Inc.*, 2010 U.S. Dist. LEXIS 60795 (D.N.J. June 18, 2010), the Court held that

2

"transportation and logistics services provided by Defendants cannot qualify as the sale of merchandise to the general public [under the NJCFA]." *Id.* at 23. *See also, Cetel v. Kirwan Fin. Group, Inc.*, 460 F.3d 494, 514-515 (3d Cir. N.J. 2006)(Dismissal of NJCFA claim *affirmed* where the claim concerned complex life insurance plans sold to a discrete class of investors, not to the general public); *J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1274 (3d Cir. N.J. 1994)(The NJCFA is not applicable to distribution or franchise transactions); *Windsor Card Shops v. Hallmark Cards*, 957 F. Supp. 562, 567 (D.N.J. 1997)("Financial planning, store planning, and merchandising services are not services that are sold to the general public. Therefore, those services are not 'merchandise' under the NJCFA").

In a software related case, *Princeton Healthcare System v. Netsmart New York, Inc.*, 422 N.J. Super. 467 (App.Div. 2011), the Superior Court reversed the trial court's denial of a motion to dismiss the NJCFA claim, because the implementation of a complex computer system was not a simple purchase of software sold to the public at large. *Id.* at 473. The *Netsmart* court specifically stated that the term "public" in the definition of "merchandise", refers to the "public at large". *Id.* (citations omitted). *See also, Bracco Diagnostics, Inc. v. Bergen Brunswig Drug Co.*, 226 F. Supp. 2d 557, 560-562 (D.N.J. 2002) (NJCFA not applicable to the provision of data reports for accounting and inventory tracking).

Instantly, Dydacomp sells a complex order processing software system designed to manage various business functions, including the processing of payment card (credit/debit card) transactions for E-commerce merchants. Or as Plaintiff puts it, "Dydacomp sells an order processing system for online merchants". (Second Amended Complaint, "SAC", at ¶ 8; *see* D.E. 32).

3

The specialized nature of this software system is apparent from the description of its functionality as set forth in the SAC at ¶¶ 15 – 16. Plaintiff states therein that the process includes both authorization and then settlement of a payment card transaction, requiring electronic interactions (facilitated by the software) between the merchant, the payment processor and the financial institution that issued the payment card, culminating in electronic financial reconciliation of the transaction. Further, the payment card transaction data that is transmitted and/or processed via the software system is subject to stringent security standards, such as "PA-DSS" and "PCI DSS", mandated by 3rd party organizations, requiring specialized development and testing of the software system. (SAC at ¶¶ 17, 25).

Accordingly, in light of the specialization and complexity of the product, as well as the discrete class to which it is targeted, the software system sold by Dydacomp is not a typical product or service sold to the general public at large. Thus, the nature and character of the transaction is such that the software does not qualify as "merchandise" within the meaning of the NJCFA.

Significantly, there is one reported decision, albeit not within the 3rd Circuit, where payment card processing services were the subject of an NJCFA claim. In *In re Heartland Payment Sys., Customer Data Sec. Breach Litig.*, 834 F. Supp. 2d 566, 572 - 575 (S.D. Tex. 2011), various financial institution Plaintiffs brought claims arising from hackers obtaining credit card information from the computers of the Defendant, Heartland Payment Systems, Inc., a

company that performed payment card processing services for merchant transactions. *Id.* at 575 – 575.[1] Claims were brought under various state consumer protection laws, including the NJCFA. *Id.* at 597 – 602.

In dismissing the NJCFA claim, the Court cited the lack of any direct purchase made by the financial institutions from Heartland. However, in further support of its holding, the Court stated:

> Additionally, payment-card processing services <u>are not offered to the general public</u>. Instead, such services are provided by specific entities for members of the [credit card] networks.

*Id.* at 602. (Emphasis added).

While this Court is not bound by the *Heartland* decision, the *Heartland* Court's understanding of payment card processing services is persuasive in light of the necessity to deeply explore the character and nature of those types of services in the *Heartland* matter. Further, the characterization of such services as not offered to the general public is entirely consistent with the nature of the transaction between Plaintiff and Dydacomp (SAC at ¶ 8) and is also consistent with New Jersey law. *See e.g., Heartland* at 601, *citing Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 514 (3d Cir. 2006)(The NJCFA applies only to "goods or services

---

[1] In fact, evoking Plaintiff's description of Dydacomp's services in the SAC, the *Heartland* Court described the payment card transaction process at issue, as follows:

> Every day, merchants swipe millions of customers' payment cards. In the seconds that pass between the swipe and approval (or disapproval), the transaction information goes from the point of sale to an acquirer bank, across the credit-card network, to the issuer bank, and back. Acquirer banks contract with merchants to process their transactions, while issuer banks provide credit to consumers and issue payment cards. The acquirer bank receives the transaction information from the merchant and forwards it over the network to the issuer bank for approval. If the issuer bank approves the transaction, that bank sends money to cover the transaction to the acquirer bank. The acquirer bank then forwards payment to the merchant.

*Heartland*, 834 F. Supp. at 574.

generally sold to the public at large."). Accordingly, *Heartland* serves as further support for dismissal of Plaintiff's NJCFA claim.

In its opposition to this brief, it is anticipated that Plaintiff may rely on a case from over 25 years ago -- *Hundred E. Credit Corp. v. Eric Schuster Corp.*, 212 N.J. Super. 350, 515 A.2d 246 (N.J. Super. Ct. App. Div. 1986). There, the court considered an NJCFA claim involving the sale of computer peripherals (physical computer parts), not software. While oft-cited by Plaintiffs seeking an expansive reading of the NJCFA, the *Hundred E. Credit* matter simply holds that businesses are not generally prohibited from bringing NJCFA claims, depending on the circumstances. That is, business entities are not excluded under the language of the Act. *Id.*, 212 N.J. Super. 350 at 356-357. *See also, Prof'l Cleaning & Innovative Bldg. Servs. v. Kennedy Funding Inc.*, 408 Fed. Appx. 566, 571 fn 2 (3d Cir. N.J. 2010)(*Hundred E. Credit* "merely stands for the basic principle that businesses can be susceptible to victimization at the hands of unscrupulous sellers and are thus generally permitted to maintain causes of action under the [N]CFA.").

The *Hundred E. Credit* court did not analyze whether the computer peripherals in question were in fact sold to the public at large. As such, the *Hundred E. Credit* holding has limited application and does not offer relevant guidance on the issue of whether the Dydacomp software system qualifies as "merchandise" under the NJCFA. Instead, *Heartland*, *Medquist* and the other recent cases cited herein, *supra*, are controlling in this regard.

**B.  SINCE PLAINTIFF HAS NOT SPECIFICALLY PLED THAT THE SOFTWARE SYSTEM IS OFFERED TO THE PUBLIC, PLAINTIFF CAN NOT STATE A CLAIM UNDER THE NJCFA.**

Plaintiff's SAC unequivocally states that Dydacomp's product is sold to "online merchants." (SAC at ¶ 8). There is no allegation that the order processing software system is

6

offered to the public. This pleading defect is fatal to Plaintiff's NJCFA claim and alone is sufficient for dismissal.[2]

A similar issue was considered recently in *United Cmtys., LLC v. Hallowell Int'l, LLC*, 2012 U.S. Dist. LEXIS 166136 (D.N.J. Nov. 21, 2012). The court held that based on the allegations in the Amended Complaint, it could not conclude that the product at issue was offered to the public for sale, as required by the statutory language of the NJCFA. "Therefore, because Plaintiff has not plead [sic] that the heat pumps were offered to the public for sale, Plaintiff has failed to set forth a legitimate cause of action pursuant to the New Jersey Consumer Fraud Act." *Id.* at 7 – 8.

Similarly, in *S. Broward Hosp. Dist. v. MedQuist, Inc., (supra)*, the court quoted Plaintiff's Third Amended Complaint (TAC) in dismissing the NJCFA claim. The TAC stated that "MedQuist provides . . . medical transcription services to hospitals and other healthcare facilities . . . ." Thus, there was "no indication [in the TAC] that such medical transcription services are generally available to non-hospital entities." *MedQuist, Inc.*, 516 F. Supp. 2d 370, 400 (D.N.J. 2007).

Instantly, the SAC (like the TAC in MedQuist) provides no indication that the order processing software system is sold to the general public or to any entities other than "online merchants." As such, on its face, the SAC is insufficient to state a claim under the NJCFA, and said claim must be dismissed.

---

[2] Plaintiff has failed to amend its pleadings in this regard despite ample opportunity to do so. In fact, this issue was previously briefed by the parties based on identical language in Plaintiff's Amended Complaint (the First Amended Complaint), D.E. 14 at ¶ 8. *See also*, Brief in Support of Dydacomp's Motion to Dismiss Amended Complaint (D.E. 19 at p. 13) and Plaintiff's Brief in Opposition (D.E. 26 at pp. 18 – 19). Thus, any further amended pleading to attempt to correct this defect would obviously be futile.

## III. CONCLUSION

For the foregoing reasons, and the reasons set forth in Dydacomp's Brief in Support of its Motion to Dismiss the Second Amended Complaint, and Dydacomp's Reply Brief in further support, it is respectfully submitted that all of Plaintiff's claims in the Second Amended Complaint, as asserted against Dydacomp Development Corp., should be dismissed, with prejudice.

                                **MARSHALL, DENNEHEY, WARNER,**
                                **COLEMAN & GOGGIN**

                          BY: /s/ David J. Shannon, Esq.
                              DAVID J. SHANNON, ESQUIRE
                              ERIC A. PACKEL, ESQUIRE (*pro hac vice*)
                              Attorneys for Defendant,
                              Dydacomp Development Corp.

Dated: March 26, 2013

## CERTIFICATION OF MAILING

I, the undersigned, being of full age, hereby certify that on this 26th day of March 2013, I electronically filed and served the Additional Brief in Support of Dydacomp Development Corp.'s Motion to Dismiss the New Jersey Consumer Fraud Act Claim in Plaintiff's Second Amended Complaint upon:

United States District Court Clerk
United States District Court
District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07101

Vincent Savino Verdiramo, Esq.
Verdiramo & Verdiramo
3163 Kennedy Blvd.
Jersey City, NJ 07306

David A. Ward, Esq.
23 Vreeland Road, Suite 220
Florham Park, NJ 07932

And a courtesy copy via regular U. S. Mail upon:

The Honorable William H. Walls
United States District Court
District of New Jersey
Martin Luther King, Jr. Federal Building
50 Walnut Street
Newark, NJ 07101

I hereby certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: /s/ David J. Shannon, Esq.
    DAVID J. SHANNON, ESQUIRE
    Attorney for Defendant,
    Dydacomp Development Corp.

Dated: March 26, 2013