FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STOCKROOM, INC. : | |
| : | |
| Plaintiff, : | **OPINION** |
| : | |
| v. : | Civ. No. 11-6220 (WHW) |
| : | |
| DYDACOMP DEVELOPMENT CORP., and : | |
| PLUG & PAY TECHNOLOGIES, INC., : | |
| : | |
| Defendants. : | |

**Walls, Senior District Judge**

      This case concerns a credit card processing system that allegedly failed to process certain transactions. Defendant Dydacomp Development Corporation ("Dydacomp") moves to dismiss Plaintiff Stockroom, Inc.'s ("Stockroom") second amended complaint under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. The Court decides the motion without oral argument under Federal Rule of Civil Procedure 78(b). Dydacomp's motion is granted in part and denied in part.

FACTUAL AND PROCEDURAL BACKGROUND

      The facts of this case have been fully set forth in the Court's previous opinion dismissing Stockroom's claims without prejudice. ECF No. 30. In brief, Plaintiff Stockroom is a retailer of adult-themed products and clothing. Second Am. Compl. ¶ 7. Defendant Dydacomp is a software company that sells an order processing system for online merchants called Multichannel Order Manager ("MOM"). *Id.* ¶¶ 1, 8. In 1999, Stockroom began to use the MOM system to process retail transactions at its physical and online stores. *Id.* ¶ 9. Defendant Plug & Pay Technologies,

1

**FOR PUBLICATION**

Inc. ("Plug & Pay") processes credit card transactions for online merchants in conjunction with the MOM system. Stockroom started using Plug & Pay in 2004. *Id.* ¶¶ 1, 10-12. In 2010, upon closing one of its stores, Stockroom discovered problematic credit card transactions where money was not deposited in its bank account and customer refunds were issued in error. *Id.* ¶¶ 1, 18-21, 39. Stockroom alleges that Defendants Dydacomp and Plug & Pay are responsible for the problem and about 3% of credit card transactions were affected. *Id.* ¶¶ 1, 21.

Stockroom's first amended complaint alleged seven claims: (1) breach of contract against Dydacomp; (2) breach of contract against Plug & Pay; (3) breach of covenant of good faith and fair dealing against both Defendants; (4) violation of the New Jersey Consumer Fraud Act ("NJCFA") against both Defendants; (5) breach of express warranty against both Defendants; (6) breach of implied warranty of merchantability against both Defendants; (7) breach of warranty of fitness for a particular purposes against both Defendants. First Am. Compl. ¶¶ 29-75. The Court dismissed all the claims without prejudice. The claims based on breach of contract and breach of warranty were held to be time-barred under N.J. Stat. Ann. § 12A:2-725. Opinion at 8 (ECF No. 30). The Court instructed Stockroom that more detailed allegations of fraudulent concealment would be necessary for equitable tolling to apply. *Id.* at 9. Stockroom also failed to plead its NJCFA claim with sufficient particularity. *Id.* at 11-13. Stockroom was permitted to re-file to address these deficiencies and to add another claim of common law fraud. *Id.* at 12-13.[1]

Stockroom filed a second amended complaint on October 1, 2012. ECF No. 32. Dydacomp moves to dismiss again, arguing that Stockroom still fails to plead sufficient facts for fraudulent concealment and fraud.

---

[1] The second amended complaint also contains an additional claim of breach of fiduciary duty. Second Am. Compl. ¶¶ 84-88. Dydacomp observes that this new claim is not authorized by the Court's Opinion and Order. Dydacomp's Br. at 3 n.3 (ECF No. 40-2). Stockroom agrees to dismiss this claim. Stockroom's Opp'n Br. at 21 (ECF No. 44).

FOR PUBLICATION

## STANDARD OF REVIEW

When deciding a 12(b)(6) motion to dismiss, the Court accepts as true all facts alleged in the complaint and construes the complaint in the light most favorable to the plaintiff. *Fleisher v. Standard Ins. Co.*, 679 F.3d 116, 120 (3d Cir. 2012) (citations omitted). Legal conclusions asserted in the complaint are disregarded. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009). The Court should determine whether the facts alleged are sufficient to show that the plaintiff has "'a plausible claim for relief.'" *Id.* at 211 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "This 'plausibility' determination will be a 'context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). After the Supreme Court's decisions in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), "'threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

## DISCUSSION

### I.   Equitable tolling

The Court dismissed most of Stockroom's claims (counts I, II, III, V, VI, VII) because they are time-barred under N.J. Stat. Ann. § 12A:2-725. Opinion at 8. For equitable tolling to apply, Stockroom was instructed to plead with specificity how Dydacomp actively concealed its alleged wrongdoing. *Id.* at 8-9.

In the second amended complaint, Stockroom provides more details about Dydacomp's alleged fraudulent concealment. Stockroom's theory is that the faulty credit card transactions were caused by Dydacomp's MOM system issuing improper authorization codes. Stockroom reasonably relied upon those authorization codes as a sign that the transactions were legitimately

processed. Second Am. Compl. ¶¶ 15, 22-27, 31. Stockroom claims Dydacomp must have been aware of the problem because one of its employees "intentionally created the software code that caused the MOM software" to generate the faulty authorization codes. *Id.* ¶ 32. Dydacomp allegedly misrepresented and concealed the flaws in the MOM system in several respects: (1) the hypothetical programmer who created the faulty software program and then concealed the error, *id.* ¶¶ 31-33; (2) each faulty authorization code generated by the MOM system constitutes "a misrepresentation regarding the status of the transaction," *id.* ¶ 31; and (3) Dydacomp's sales and promotional materials misrepresented that the software could reliably process credit card transactions, *id.* ¶¶ 8-9. *See* Stockroom's Opp'n Br. at 13 (ECF No. 44).

These are creative arguments, but their very creativity only underscores the absence of facts showing that Dydacomp overtly tricked or misled Stockroom. That some hypothetical programmer at Dydacomp knew about the problem and concealed it is sheer conjecture. Each faulty authorization code generated by the MOM system cannot constitute a misrepresentation for equitable tolling purposes; the doctrine requires an act of concealment or trickery beyond the *original* act of wrongdoing. To complain that a program did not work properly does not mean that each error generated by that program is a misrepresentation. *See 287 Corporate Ctr. Assocs. v. Twp. of Bridgewater*, 101 F.3d 320, 325 (3d Cir. 1996) (continually taxing a property as commercial property does not constitute misleading action for equitable tolling purposes). Lastly, Dydacomp's promotional and sales materials may not have revealed the MOM system error, but they also do not amount to "trickery or inducement" for Stockroom to miss the filing deadline. An overview of the cases where equitable tolling is applied shows that more specific acts of trickery are typically required. *See Price v. N.J. Mfrs. Ins. Co.*, 182 N.J. 519, 525-27 (2005) (applying equitable tolling where insurance company actively lulled the plaintiff into

**FOR PUBLICATION**

thinking that he had properly filed his claim by requesting and receiving documents over a three-year period, denying claim only after filing deadline had elapsed); *Fabcon East, LLC v. Stegla Group, Inc.*, No. 10-4601, 2011 WL 2293454, at *5 (D.N.J. June 8, 2011) (contract limitations period equitably tolled where defendants repeatedly assured plaintiff that debt would be paid); *Foodtown v. Sigma Marketing Sys., Inc.*, 518 F. Supp. 485, 494 (D.N.J. 1980) (finding possible fraudulent concealment where defendant forwarded documents to plaintiff with misleading information).

Plaintiff relies heavily upon *In re Ford Motor Co. E-350 Van Products Liability Litig.*, 2008 WL 4126264 (D.N.J. May 31, 2008), in which the court applied equitable tolling for plaintiffs who allege generally that Ford deceived consumers by representing that the vehicles were safe. *Id.* at *18. *Ford Motor* is an outlier case that bucks the trend, and the court even concedes that plaintiffs "could have [pled] with greater precision." *Id.* It is not binding precedent for this Court. *Threadgill v. Armstrong World Indus., Inc.*, 928 F.2d 1366, 1371 (3d Cir. 1991) ("The doctrine of *stare decisis* does not compel one district court judge to follow the decision of another.") (quotations omitted). The Court places more weight upon recent New Jersey cases emphasizing that equitable tolling applies only in "narrowly-defined circumstances." *R.A.C. v. P.J.S. Jr.*, 192 N.J. 81, 100 (2007) (citing *Price*, 182 N.J. at 525-27). *See also Trinity Church v. Lawson-Bell*, 394 N.J. Super. 159, 171 (N.J. Super. Ct. App. Div. 2007) ("The requirements of equitable estoppel are quite exacting").

Stockroom makes a compelling case that it could not have discovered these faulty credit card transactions earlier than it did, Second Am. Compl. ¶¶ 34-39, but that is beside the point. The discovery doctrine does not apply to breach of contract claims governed by the Uniform Commercial Code. *Foodtown*, 518 F. Supp. at 488. The discovery rule and the equitable tolling

**FOR PUBLICATION**

doctrine are distinct. *Freeman v. State*, 347 N.J. Super. 11, 31 (N.J. Super. Ct. App. Div. 2002). The discovery rule postpones the accrual of a cause of action. Equitable tolling acknowledges the accrual of the cause of action but tolls the statute of limitation because the defendant's inequitable conduct "induced or tricked" the plaintiff to miss the filing deadline. *Id.* (quotations omitted). In the latter circumstance, a defendant is denied the benefit of the statute of limitations due to his own wrong. *Trinity Church,* 394 N.J. Super. at 171. Stockroom has not alleged sufficient facts of concealment or trickery on Dydacomp's part for equitable tolling to apply with respect to the initial installation of the MOM system in 1999.

Lastly, the Court considers Stockroom's argument that any breach of warranty and breach of contract claims that accrued within four years before filing suit are not time barred. *See* Opp'n Br. at 4-5 (ECF No. 44). After the original MOM system was installed in 1999, there have been several upgrades. With each upgrade, the parties agreed to a new license agreement. Exs. B-G, Second Am. Compl. These subsequent agreements contain a 30-day express warranty and this disclaimer:

> Except for the express warranties set forth above, Dydacomp disclaims all other warranties and makes no warranties, either expressed or implied, particularly no implied warranties of merchantability or of fitness for a particular purpose. Some states or jurisdictions do not allow the exclusion of implied warranties, so the above exclusions may not apply to you. This warranty gives you specific legal rights and you may have other legal rights that vary from state to state or by jurisdiction.

Exs. B-G, Second Am. Compl. The parties have not briefed on the interpretation of this clause, and the Court will not wade into that analysis at this juncture. The fact remains that these license agreements were entered into within four years before the commencement of this suit. The Court concludes that Stockroom's breach of contract and breach of warranty claims that relate to these later contracts are not barred by the statute of limitations.

FOR PUBLICATION

## II. New Jersey Consumer Fraud Act

### A. Scope of the Act

The Court first considers the threshold issue of whether the NJCFA applies. In a footnote in its reply brief, Dydacomp argues for the first time that NJCFA does not apply here because the Act is limited to "merchandise" that is sold to the general public. Reply Br. at 8 n.3 (ECF No. 45). It is usually improper for a moving party to shift gears and introduce new legal arguments in the reply brief. *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994) ("An issue is waived unless a party raises it in its opening brief"); *D'Aiuto v. City of Jersey City*, No. 06-6222, 2007 WL 2306791, at *4 n.1 (D.N.J. Aug. 8, 2007) (declining to consider new arguments raised for the first time in reply brief). But the Court requested additional briefing because the legal issue is significant. ECF No. 49.

After reviewing the parties' submissions, the Court concludes that the NJCFA applies. New Jersey courts have squarely held that the NJCFA applies to the sale of merchandise for use in business operations and "a business entity can be, and frequently is, a consumer in the ordinary meaning of that term." *Hundred East Credit Corp. v. Eric Shuster Corp.*, 212 N.J. Super. 350, 354-56 (N.J. Super. Ct. App. Div. 1986). The *Hundred East* court refused to limit the NJCFA to sales and advertising of merchandise for "personal, family or household use," explaining:

> Business entities, like individual consumers, cover a wide range. Some are poor, some wealthy; some are naive, some sophisticated; some are required to submit, some are able to dominate. Even the most world-wise business entity can be inexperienced and uninformed in a given consumer transaction. Unlawful practices thus can victimize business entities as well as individual consumers. It may well be, of course, that certain practices unlawful in a sale of personal goods to an individual consumer would not be held unlawful in a transaction between particular business entities; the Act largely permits the meaning of "unlawful practice" to be determined on a case-by-case basis.

**FOR PUBLICATION**

*Id.* at 356-57 (affirming trial court's decision that sale of computer disc units and disc drives violates the NJCFA). In *Dreier Co., Inc. v. Unitronix Corp.*, 218 N.J. Super. 260, 272-73 (N.J. Super. Ct. App. Div. 1986), the Appellate Division held that the sale of a computer system "consisting of hardware and 'custom programmed software' for billing, accounts receivable and inventory control" was within the scope of NJCFA. Plaintiff was a company that "had no knowledge or expertise in the computer field and therefore relied upon [Defendants] to provide a system to meet plaintiff's particular needs." *Id.* at 263-65. The court observed that the plaintiff was "just as vulnerable to unconscionable business practices as a private consumer." *Id.* at 273 (citing *Hundred East*, 212 N.J. Super. at 356-57). *See also Coastal Group, Inc. v. Dryvit Systems, Inc.*, 274 N.J. Super. 171, 179-80 (N.J. Super. Ct. App. Div. 1994) (trial court erred in dismissing NJCFA claim because "protections of the Consumer Fraud Act extend to the purchase of merchandise for use in business operations").

Many cases where a business-to-business transaction is deemed to be outside the scope of NJCFA involve wholesalers and distributers. In those circumstances, the distributor cannot sue the wholesaler under the NJCFA because the distributor is not a "consumer" as that word is commonly understood. *See Papergraphics Int'l, Inc. v. Correa,* 389 N.J. Super. 8, 13-14 (N.J. Super. Ct. App. Div. 2006) ("Plaintiff's total purchase of 9,714 printer ink cartridges was for resale at a significant profit, not for its individual use."); *Arc Networks, Inc. v. Gold Phone Card Co., Inc.*, 333 N.J. Super. 587, 589-92 (N.J. Super. Ct. App. Div. 2000) ("The bulk telephone and computer services that [Defendant] purchased from [Plaintiff] were not available to the general public…[Defendant's] purpose in contracting for [Plaintiff's] services was to resell those services to the purchasers of its phone cards."); *Lithuanian Commerce Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 469 (D.N.J. 1998) ("courts have consistently concluded that purchasers

**FOR PUBLICATION**

of wholesale goods for resale are not consumers within the meaning of the NJCFA"). A "consumer" is generally defined as "'one who uses (economic) goods, and so diminishes or destroys their utilities.'" *Hundred East*, 212 N.J. Super. at 355 (quoting *Webster's New International Dictionary* (2d ed.)). By contrast, a distributor buys goods from a wholesaler to resell those goods for profit to the public. "It is clear that a corporation may qualify as a person within the Act when if it finds itself in a consumer oriented situation." *Sara Lee*, 1279 F.R.D. at 469 (quotations omitted).

Here, Stockroom was a consumer because it purchased the MOM system for consumption, not resale. Like the plaintiff in *Dreier*, Stockroom is a retailer whose business is wholly unrelated to computer software and programming, but it needed a system that could reliably process retail transactions and credit card billing. *See Dreier*, 218 N.J. Super. at 263-64 (plaintiff company was engaged in the sale and distribution of sporting goods). Stockroom bought merchandise for use in its own business operations. In that posture, it is just as vulnerable in its purchase as a private individual who buys a product from a store.

These same considerations compel the Court to distinguish this case from *Princeton Healthcare System v. Netsmart New York, Inc.*, 422 N.J. Super. 467 (N.J. Super. Ct. App. Div. 2011). In *Princeton Healthcare*, the court concluded that the NJCFA does not apply "to a negotiated contract between corporations for the installation and implementation of a complex computer software system" that handles medical billing for a healthcare facility. While this case also concerns a computer software system, many of the factors that led to the outcome in *Princeton Healthcare* are absent. As example, the *Princeton* healthcare facility, assisted by a computer consultant, prepared a request for proposals that contained detailed specifications. 422 N.J. Super. at 469. Defendant submitted a 149-page proposal. *Id.* The parties then engaged in

9

**FOR PUBLICATION**

lengthy negotiations spanning several years on the terms of a proposed contract. Counsel for both sides as well as plaintiff's computer consultant were active participants in those negotiations. *Id.* The resulting contract "did not provide for simply the installation of a standardized computer software program but rather the design of a custom-made program to satisfy Princeton House's unique needs." *Id.* at 474. The court found that "[t]his kind of heavily negotiated contract between two sophisticated corporate entities does not constitute a 'sale of merchandise' within the intent of the CFA." *Id.*

By contrast, construing the complaint in light most favorable to Plaintiff, the Court does not find any indication that the contracts between Stockroom and Dydacomp were heavily negotiated; the contracts attached as exhibits read like form contracts. Dydacomp's website describes the MOM system as being used by "[n]early 10,000 eCommerce, catalog fulfillment, and multichannel commerce merchants worldwide." Second Am. Compl. ¶ 8. The MOM system more resembles a "standardized computer software program" for e-commerce merchants than the complex and highly-customized system described in *Princeton Healthcare*. The NJCFA applies.

### B.  Whether NJCFA pleading standards are met

The Court previously dismissed Stockroom's NJCFA claim without prejudice, allowing Stockroom to replead the claim with more specificity as required under Federal Rule of Civil Procedure 9(b). Opinion at 11-13 (ECF No. 30). "Unlawful practice" under the NJCFA can be affirmative acts, knowing omissions, or regulation violations. *Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 17 (1994). Stockroom argues that it has alleged sufficient facts in the second amended complaint for both affirmative acts and omissions. Stockroom's Opp'n Br. at 21. The affirmative act was the intentional programming of the faulty software. *Id.*; Second Am. Compl. ¶¶25-27, 32. The omission was committed when Stockroom's promotional and sales material did not

reveal the problems in the software and the MOM system continued to generate fake authorization codes. Stockroom's Opp'n Br. at 21; Second Am. Compl. ¶¶ 26-27, 31-33.

The Court concludes that Stockroom has alleged a plausible claim for omission under the NJCFA. The NJCFA's omission provision reads:

> The act, use or employment by any person of any unconscionable commercial practice ... or *the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission,* in connection with the sale or advertisement of any merchandise or real estate ... is declared to be an unlawful practice.

N.J. Ann. Stat. § 56:8-2(emphasis added). When the alleged consumer fraud consists of an omission, intent is an essential element of the fraud. *Cox*, 138 N.J. at 18. The heightened pleading standard of Rule 9(b) allows "intent, knowledge, and other conditions of a person's mind [to] be alleged generally." Fed. R. Civ. P. 9(b).

Stockroom's second amended complaint meets these standards. Since the original installation in 1999, Dydacomp has required Stockroom to purchase and install several upgrades, which were done according to Dydacomp's instructions. Second Am. Compl. ¶ 9. Throughout this period, Stockroom alleges that about 3% of the credit card transactions were faulty because Stockroom was not getting paid; this is significant for any business's profit margin. *Id.* ¶ 39. Stockroom further alleges that Dydacomp's agents "were aware of the faulty programming and/or test functions and concealed the problem, even with updates and new versions of the program." *Id.* ¶ 26. Rule 9(b) does not require more than this at the pleadings stage. *See, e.g., Maniscalco v. Brother Intern. Corp.*, 627 F. Supp. 2d 494, 500 (D.N.J. 2009); Fed. R. Civ. P. 9(b). In reaching this conclusion, the Court is also mindful that the NJCFA was meant to be one of the strongest consumer protection laws in the nation and should be construed liberally in favor of consumers. *See Cox*, 138 N.J. at 15-16.

**FOR PUBLICATION**

### III. Common law fraud

The second amended complaint adds a cause of action for common law fraud. Second Am. Compl. ¶¶ 89-96. The five elements of common law fraud are: (1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages. *Gennari v. Weichert Co. Realtors*, 148 N.J. 582, 610 (1997). Silence can be fraudulent under common law in circumstances where there is a duty to disclose. *Perri v. Prestigious Homes, Inc.*, 2012 WL 95564, at *5 (N.J. Super. Ct. App. Div. Jan. 13, 2012). Stockroom alleges that the material misrepresentation was the issuance of false authorization codes, which it relied on. Second Am. Compl. ¶¶ 90-93. Stockroom also claims that Defendants failed to inform Stockroom about the defects in the system when there was a duty to do so. *Id.* ¶ 96.

The Court concludes that Stockroom does not satisfy the first and most basic element of common law fraud—a statement of material fact that is false. *See Perri* at *4. That the MOM system malfunctioned by issuing faulty authorization codes is an alleged fact; it is not a material misrepresentation of a fact. Missing is any specific allegation that Dydacomp knowingly lied to Stockroom about the system malfunction, with the intent of inducing Stockroom to purchase the faulty product.

Stockroom's omission argument under common law fraud fails as well. Unlike omission under the NJCFA, a fraudulent omission under common law requires a duty to disclose. *See Perri* at *5 (citing *Weintraub v. Krobatsch*, 64 N.J. 455, 455-56 (1974)); *see also United Jersey Bank v. Kensey*, 306 N.J. Super. 540, 551-52 (N.J. Super. Ct. App. Div. 1997); *Green v. General Motors Corp.*, No. A-2831-01T-5, 2003 WL 21730592, at *8 (N.J. Super. Ct. App. Div. July 10,

FOR PUBLICATION

2003). Stockroom alleges that Dydacomp had a duty to disclose due to a "fiduciary obligation." Second Am. Compl. ¶¶ 84-88, 96. But in its opposition brief, Stockroom agrees to dismiss its claim for breach of fiduciary duty, effectively waiving the argument that its contracts with Defendants created a fiduciary relationship. Absent such a relationship, there is no duty to disclose and Dydacomp's silence does not amount to fraud. *See Kensey* at *551-52 (holding bank had no duty to disclose because there is no presumed fiduciary relationship between a bank and its customer).

## CONCLUSION

Defendant Dydacomp's motion to dismiss all of Stockroom's breach of contract and warranty claims is denied in part and granted in part. Because Stockroom failed to allege sufficient facts of fraudulent concealment for equitable tolling to apply, any breach of contract or breach of warranty claims stemming from the original installation are barred by the four-year statute of limitations under N.J. Stat. Ann. § 12A:2-725. But any breach of warranty and breach of contract claims that accrued within four years of filing suit are not time-barred. Dydacomp's motion to dismiss Stockroom's NJCFA claim is denied because Stockroom has alleged a plausible claim for omission. Dydacomp's motion to dismiss the common law fraud claim is granted.

April 24, 2013

/s/ **William H. Walls**

United States Senior District Judge